1 | JEFF D. FRIEDMAN (173886)
SHANA E. SCARLETT (217895)
2 | HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
3 | Berkeley, CA 94710
Telephone: (510) 725-3000
4 | Facsimile: (510) 725-3001
jefff@hbsslaw.com
5 |   -and-
STEVE W. BERMAN (*Pro Hac Vice pending*)
6 | HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
7 | Seattle, WA 98101
Telephone: (206) 623-7292
8 | Facsimile: (206) 623-0594
steve@hbsslaw.com

9

[Additional counsel listed on signature page]    E-filing

10

*Attorneys for Plaintiff*

11

JSW

12 |              UNITED STATES DISTRICT COURT

13 |              NORTHERN DISTRICT OF CALIFORNIA

14 |                   SAN FRANCISCO DIVISION

15 | KYLE SAWYER, Individually and on behalf of    CV 10    0014
all others similarly situated,                Case No.

16 |                                           )  CLASS ACTION
                                            )
17 |                   Plaintiff,             )
                                            )  COMPLAINT FOR DAMAGES,
18 |          v.                             )  RESTITUTION, AND INJUNCTIVE
                                            )  RELIEF
19 | BILL ME LATER, INC.; EBAY INC.          )
                                            )  **JURY TRIAL DEMANDED**
20 |                   Defendants.           )
                                            )
21 | _____ )

22

23

24

25

26

27

28

010133-11 321951 V4

1    Plaintiff, Kyle Sawyer, brings this class action suit against Bill Me Later, Inc., and eBay,

2    Inc. on behalf of himself and all others similarly situated. The following allegations are based on

3    information and belief, except as to allegations specifically pertaining to Plaintiff, which is based

4    on personal knowledge.

5                                    **NATURE OF ACTION**

6    1.      Defendant Bill Me Later, Inc. ("Bill Me Later"), which offers an instant,

7    transactional credit plan that consumers can use at the point-of-sale to check out and make online

8    purchases, has structured a relationship with CIT Bank, an out-of-state bank, to disguise the true

9    lending relationship in connection with these consumer loans.

10   2.      The purpose and structure of the relationship between Bill Me Later and CIT Bank

11   is to facilitate Bill Me Later's illegal efforts to avoid California laws that protect consumers from

12   being charged usurious interest rates and contractual penalties.

13   3.      Bill Me Later, which is neither a state or federally chartered financial institution nor

14   a licensed financial lender, is subject to generally applicable California consumer protection laws

15   and is prohibited from charging contractual penalties and usurious interest rates. Bill Me Later has

16   devised a scheme with the purpose and intent to avoid these California consumer protection laws,

17   thereby causing injury to consumers and competitors.

18   4.      Bill Me Later has constructed a scheme whereby it in effect "rents" CIT Bank's

19   name and its bank charter as a sham, so that Bill Me Later can evade California law, which would

20   otherwise prohibit Bill Me Later from making loans with usurious interest rates and charging

21   illegal contractual penalties. Bill Me Later has structured this "rent-a-charter" relationship with

22   CIT Bank to completely escape regulatory oversight and while at the same time hiding under the

23   preemption umbrella afforded to certain banking institutions – even though Bill Me Later is the

24   true lender in its relationship with consumers.

25   5.      Instead of using a credit card number to checkout during an online purchase of

26   goods or services, shoppers click on the Bill Me Later icon and are asked for the last four digits of

27   their Social Security number and their date of birth. If their credit is satisfactory according to Bill

28   Me Later's sophisticated credit scoring algorithm, Bill Me Later arranges the transfer of payment

1    to the merchant and sends the shopper a bill within two weeks. Shoppers can pay right away, or

2    later with usurious interest rates and subject to exorbitant penalties for paying late. Shoppers can

3    pay their bill online through their bank or with a check by mail.[1]

4        6.    At all material points in a lending transaction involving Bill Me Later, Bill Me Later

5    controls the loan transaction. Accordingly, the legal and economic reality of all transactions is that

6    Bill Me Later is the true lender to the consumer – not CIT Bank. Facts demonstrating Bill Me

7    Later is the true lender include but are not limited to:

8        • Bill Me Later is the sole entity to interface with the consumers;

9        • Bill Me Later owns and controls the branding of the loans which are available only
           through its proprietary credit approval software engine;

10

11       • Bill Me Later provides and accepts the online loan applications for consumers;

         • Bill Me Later reviews the credit of consumer applicants and decides whether to make
12         the loans using Bill Me Later's credit decision computer model;

13       • Bill Me Later owns both the liabilities (including risk of default) and receivables for the
           loans it approves;

14

15       • Bill Me Later services the accounts and accepts loan payments from consumers;

         • Bill Me Later claims the consumer loans as assets in its independently audited financial
16         statements and sets the late fees and interest rates about which Plaintiff and the Class
           complain.

17

18       7.    In truth, CIT Bank is not the "lender" but instead has agreed to the structure for a

     fee so that Bill Me Later may attempt to avoid California laws prohibiting excessive late fees and
19

     usurious interest rates. Indeed, when the tiered late fees are included, the imputed APR can exceed
20

21   100%.

22       8.    For example, a consumer posting at http://www.ripoffreport.com/Credit-Debt-

23   Services/BillMeLater/billmelater-stay-away-from-bil-eq8f2.htm    (accessed    Sept.    1,    2009)

     complains: "While ordering books online for $40.87, I was invited to open a BillMeLater account,
24

25   which I did, wanting to know how it worked; I paid $20.07 for the first billing cycle. I forgot the

26   due date of the second billing cycle, since it's not part of my regular bills. On a balance of $20.87, I

27   _____

28   [1] Erika Brown, *Technology: Credit Card Killer*, Forbes (Dec. 11, 2006), *available at*
     http://www.forbes.com/forbes/2006/1211/068_2.html; Bill Me Later, About Bill Me Later (2009),
     *available at* <https://www.billmelater.com/about/index.xhtml?s_kwcid=billmelater.

1  was charged a late fee of $19.00, plus $2 finance charge. On their website, my statement shows an

2  **ANNUAL PERCENTAGE RATE OF 115% !!!** I am charged a daily fee of $0.35. I wanted to

3  pay my total remaining balance, & immediately cancel my account. Their system did not allow me

4  to do that: I had to do it on two different days; in the meantime, of course, they are charging more

5  money. This is pure usury; these companies should not be allowed to be in business; they should

6  be sued, made to reimburse their exorbitant fees, terminated, and closed." (Emphasis added.)

7  9.  Bill Me Later must comply with California law and is not doing so on a continuing

8  basis. Accordingly, Plaintiff and the Classes bring this suit to enjoin Defendants from future illegal

9  conduct that is harmful to consumers and to Defendants' competitors and to recover funds for

10  consumers who were charged illegal and unfairly high interest rates and unlawful late fees. This

11  action arises under California Civil Code section 1671, California's Consumers Legal Remedies

12  Act, Cal. Civ. Code sections 1750, *et seq.*, Section 1 of Article XV of the California Constitution,

13  and the Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200, *et seq.*

## PARTIES

15  10.  Plaintiff, Kyle Sawyer, resides in Torrance, California, and has used the Bill Me

16  Later service and was charged and paid unlawful interest rates and penalty fees.

17  11.  Defendant Bill Me Later, Inc. is a subsidiary of Defendant eBay, Inc. ("eBay"). Bill

18  Me Later is headquartered in Timonium, Maryland, with additional offices in Hunt Valley,

19  Maryland, and San Francisco, California.

20  12.  Defendant eBay, Inc. is the parent company of Bill Me Later. EBay is

21  headquartered in San Jose, California. In 2008, eBay paid $945 million to acquire Bill Me Later.[2]

22  In its 10-Q dated April 28, 2009, eBay stated, "Bill Me Later [] purchases the receivable related to

23  the consumer loan extended by CIT Bank" and "[w]e currently fund the purchase of receivables

24  related to Bill Me Later accounts through free cash flow generated from our portfolio of businesses

25  and from our existing line of credit."[3]  Thus, eBay aids and abets Bill Me Later's violations of

26  _____

27  [2] Scott Moritz, *EBay to lend buyers a hand*, CNNMoney.com (Oct. 6, 2008),
http://money.cnn.com/2008/10/06/technology/ebay-bill-me.fortune/index.htm.

28  [3] eBay's Inc.'s 10-Q dated April 28, 2009, at p. 40, *available at* http://www.sec.gov/
Archives/edgar/data/1065088/000119312509090300/d10q.htm.

010133-11 321951 V4                                           - 3 -

1   California law described herein because it actively manages and enables the funding and
2   purchasing of the consumer loans at issue.

3       13.     Plaintiff and the Class allege on information and belief that all of the acts and
4   omissions described in this Complaint by any Defendant were duly performed by, and attributable
5   to all Defendants, each acting as agent and/or under the direction and control of the others, and
6   such acts and omissions were within the scope of such agency, direction, and/or control. Any
7   reference in this Complaint to any acts of Defendants shall be deemed to be the acts of each and
8   every defendant acting individually, jointly or severally.

9                                **CLASS ALLEGATIONS**

10      14.     Plaintiff brings this action on behalf of himself and all other persons similarly
11  situated pursuant to Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and
12  California Civil Code section 1781. Plaintiff seeks to certify and represent the following Classes:

13          a.      ***California Damages/Restitution Class:*** All California residents who
14  received a loan using the services offered by Bill Me Later and were charged and paid interest in
15  excess of ten percent within four years from the filing of this action up to and including the date
16  judgment is entered in this action;

17          b.      ***California Damages/Restitution Subclass:*** All California residents who
18  received a loan using the services offered by Bill Me Later and were charged and paid interest in
19  excess of ten percent and were also charged and paid a late fee within four years from the filing of
20  this action up to and including the date judgment is entered in this action;

21          c.      ***Injunctive Relief Class:*** All California residents who are current customers
22  of Bill Me Later.

23      15.     Plaintiff alleges, on information and belief, that the classes are composed of
24  thousands of people who have been charged and paid illegal interest and penalties in excess of five
25  million dollars ($5,000,000). The members of the classes are so numerous and geographically
26  dispersed throughout the State of California that joinder of all class members in this action is
27  impracticable.

28

010133-11 321951 V4                                   - 4 -

1    16.    The identities and addresses of the individual members of the classes are
2  ascertainable through Bill Me Later's billing records.

3    17.    Plaintiff's claims are typical of the claims of the members of the classes because
4  Plaintiff and all members of the classes were damaged by the same wrongful conduct, namely the
5  imposition of usurious interest rates and penalty fees. Additionally, in the absence of injunctive
6  relief, Defendants' practices are generally applicable to all class members.

7    18.    Plaintiff will fairly and adequately represent and protect the interests of the classes.
8  Plaintiff's interests are coincident with and not antagonistic to those of the classes. In addition,
9  Plaintiff is represented by counsel experienced and competent in the prosecution of complex class
10  actions on behalf of consumers.

11    19.    There are numerous common questions of law and fact that predominate over any
12  issues affecting individual class members. Among the questions of law and fact common to the
13  classes are:

14          a.   Whether Bill Me Later is subject to generally applicable California consumer
15               protection laws;

16          b.   Whether Bill Me Later charges unlawful usurious interest rates in violation of the
17               California Constitution or other applicable California laws;

18          c.   Whether Bill Me Later charges unlawful and unenforceable contractual penalties in
19               violation of California law;

20          d.   Whether Bill Me Later should be enjoined from imposing and collecting unlawful
21               usurious interest payments and contractual penalties from California consumers; and

22          e.   Whether eBay has unlawfully aided and abetted Bill Me Later's violations of
23               California law.

24    20.    Defendants have acted and continue to act in a manner generally applicable to class
25  members, thereby making appropriate final injunctive relief or corresponding declaratory relief
26  with respect to the Injunctive Relief Class as a whole.

27

28

21.    Class treatment will benefit the class members, the parties, and the courts and is superior to the alternatives, if any exist, for the fair and efficient adjudication of this controversy. Individual California consumers are unlikely to obtain relief in the absence of class treatment.

22.    Plaintiff knows of no unusual difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## JURISDICTION AND VENUE

23.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. sections 1332(d) *et seq.* (the Class Action Fairness Act).

24.    Venue is proper in this district because Defendants are located and transact business in this district and because hundreds of class members are located here. A substantial part of the illegal business practices were carried out within this district.

## CALIFORNIA LAW GOVERNING LATE FEES AND INTEREST RATES

25.    Section 1671 of the California Civil Code prohibits provisions in a consumer contract liquidating damages for its breach except where the parties have agreed to an amount reasonably related to the actual damages sustained when it would be impracticable or extremely difficult to fix the actual damages; otherwise the liquidated damages are construed to be unlawful penalties. Federal laws and regulations, such as the National Banking Act, potentially preempt efforts to enforce this state statute against penalty fees charged in conjunction with loans made by banks chartered out-of-state.

26.    The State of California, by Section 1 of Article XV of the California Constitution, prohibits usury and deems to be usurious interest rates on personal loans that exceed ten percent per annum. Loans made by banks chartered out-of-state potentially are exempt from the California Constitution's usury prohibition.

## UNLAWFUL PRACTICES BY BILL ME LATER

27.    Bill Me Later is an instant, transactional credit plan that consumers use at the point-of-sale to check out and make online purchases of particular goods and services. In contrast to credit cards, which provide for a revolving line of credit, transactional credit is only authorized on an item-by-item basis when goods or services are being purchased. Therefore, each instance when

1    a consumer applies for transactional credit depends on a near real-time instantaneous credit
2    decision by Bill Me Later that, if approved, is a transaction specifically intended and authorized to
3    result (and indeed results) in the sale of goods or services.

4          28.   The Bill Me Later payment solution is available on the websites of more than 1,000
5    online stores, catalogs and travel partners, including during the relevant period Borders, Blue Nile,
6    Bluefly, Continental Airlines, eLUXURY, Fujitsu, JetBlue, Overstock, QVC, Toshiba, Toys "R"
7    Us, U.S. Airways, Walmart.com and Zappos.

8          29.   Bill Me Later is the true lender to the consumer in these transactions because it: is
9    the sole entity to interface with the consumers, owns and controls the branding of the loans which
10   are available only through its credit software engine, provides the online loan applications for
11   consumers, accepts the online loan applications from consumers, reviews the credit of consumer
12   applicants, decides whether to make the loans, is the entity to extend the credit to consumers,
13   services the accounts, accepts loan payments from consumers, takes on the risk of consumers
14   defaulting on their loans, claims the consumer loans as assets in its independently audited financial
15   statements, and sets the late fees and interest rates about which the People complain. CIT is the
16   lender in name only so that Bill Me Later can in essence borrow its bank charter for purposes of
17   circumventing California laws limiting late fees and interests rates. Indeed, eBay's close to one
18   billion dollar ($1,000,000,000) purchase of Bill Me Later belies any notion that Bill Me Later is
19   simply relegated to the role of a small loan servicing agent acting on behalf of CIT.

20         30.   Courts have looked to the factors described above to determine the existence of a
21   sham or illusory lending relationship. *See, e.g., Discover Bank v. Vaden*, 489 F.3d 594, 602-603
22   (4th Cir. 2007) (factors include whether the bank extended the credit and set the interest and fees,
23   whether the bank takes on the risk, and whether independently audited financial statements identify
24   the loans as assets of the bank); *Flowers v. EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1205 (N.D.
25   Okla. 2003) (determining that the following allegations supported finding the bank *was not* the true
26   lender: "Although the loan proceeds are paid to borrowers by checks purportedly drawn from
27   County Bank, EZCorp through EZPawn exerts ownership and control over these loans. EZCorp
28   through EZPawn carries out all interaction with the borrowers, accepts the ultimate credit risk,

010133-11 321951 V4                          - 7 -

1    collects and pockets virtually all of the finance charges and fees, and owns and controls the

2    branding of the loans which are available only at its pawnshops.").

3        31.    Moreover, when looking at the practice of "rent-a-charters" in the context of the

4    payday loan industry, the Office of the Comptroller of Currency ("OCC"), the agency that

5    regulates federal banks, has asserted that "the standard for finding complete preemption is not met"

6    where "the only defendant . . . is not a national bank."[4]

7        32.    As further evidence that Bill Me Later is not merely a loan servicing company, its

8    executive team comes with deep roots in the credit card lending industry. The Chief Executive

9    Officer of Bill Me Later, Gary Marino, had an extensive background in the lending industry before

10   founding Bill Me Later, which made a huge investment in its proprietary lending model. Marino

11   spent 15 years at Citibank, rising to chief credit officer, and then left in 1996 to run the credit and

12   marketing operations at First USA, which was purchased by Bank One the next year. By 2000,

13   Marino had helped boost its receivables to $70 billion. He left that year to start Bill Me Later and

14   secured $100 million in venture capital to develop Bill Me Later's complex and proprietary lending

15   model.

16       33.    An article from Forbes confirms that "Bill Me Later's push-button simplicity masks

17   layers of hard-core engineering. When a shopper clicks the Bill Me Later icon for the first time, I4

18   rummages through 30 million pieces of data in 11 public databases used by credit bureaus and

19   utilities. I4 cross-checks your Social Security digits and birth date against the usual credit data as

20   well as esoterica such as know fraudulent addresses and bank accounts. After I4 scrubs the data of

21   duplication and error, it adds the new shopper to its databases. . . . Every subsequent purchase

22   triggers I4's software to use complex mathematical techniques such as fuzzy logic and regression

23   analysis to decide if a shopper is who he says he is, and how likely he is to pay his bills. All this

24

25

26

27   _____

[4] Pearl Chin, *Payday Loans: The Case for Federal Legislation*, Vol. 2004 U. OF ILLINOIS L.
28   REV. 723, 734 (2004), http://www.acrobatplanet.com/go/Payday_Loans_The_Case_For_Federal
     _Legislation.pdf.

1 happens in less than three seconds . . . . [I4's] systems have to be extraordinarily precise to make a
2 smart lending decision in less time than it takes to swipe a credit card."[5]

3 34. I4Commerce, Inc. ("I4") has since taken the name of its flagship product and is
4 known as Bill Me Later Inc.[6] Thus, this is further evidence that Bill Me Later is the true lender, as
5 it is the entity that performs the credit check and approval for the prospective consumers of its
6 online transactional credit.

7 35. Indeed, in the Frequently Asked Questions section of its website, Bill Me Later
8 acknowledges that it is the entity that reviews the credit of consumer applicants: "Bill Me Later
9 will review your credit report prior to opening your account. You must provide us permission
10 to review your credit report when completing your request to become a Bill Me Later
11 customer. Bill Me Later is a credit account that you can use to make purchases. Bill Me Later
12 will review the current status of your account each time you make a purchase but your full
13 credit report is not reviewed for every Bill Me Later purchase. . . . Bill Me Later does not
14 review your credit report for each transaction. However, your credit report may be reviewed
15 periodically to provide you with the maximum buying power possible . . . We do re-evaluate
16 this regularly. As you establish a good payment record with Bill Me Later, you will have
17 greater chances of being approved for each purchase you attempt."[7]

18 36. This acknowledgement can be contrasted against Bill Me Later's superficial and
19 economically hollow effort in its Terms and Conditions to suggest that CIT Bank is the party
20 responsible for providing credit checks. In the Terms and Conditions, Bill Me Later defines CIT
21 Bank as "the Lender" and then goes on to state that the consumer must "authorize the Lender to
22 review your credit report" and that the "Lender may obtain a report from a consumer credit
23 reporting agency in connection with this application and/or for any updates, renewals, extensions

24

25 [5] Erika Brown, *Technology: Credit Card Killer*, Forbes (Dec. 11, 2006), *available at*
26 http://www.forbes.com/forbes/2006/1211/068_2.html.

27 [6] Scott Dance, *I4Commerce changes name to Bill Me Later*, Baltimore Business Journal (Aug. 16, 2007), *available at* http://www.bizjournals.com/baltimore/stories/2007/08/13/daily3.html.

28 [7] Bill Me Later, Frequently Asked Questions (2009), https://www.billmelater.com/help/index.xhtml.

1    or credit on this Account."[8] In actuality, Bill Me Later performs the credit checks as described

2    above. Even CIT Bank recognizes that "Bill Me Later does a quick credit review, processed

3    behind the scenes."[9]

4        37.    Bill Me Later also makes the decision whether to adjust its loan portfolio based on

5    the results of the credit analysis it conducts. During eBay's quarterly earnings conference call on

6    April 22, 2009, eBay's Chief Financial Officer and Senior Vice President of Finance, Robert H.

7    Swan ("CFO"), stated, "On the first one on Bill Me Later, the primary decline is in the loan

8    portfolio balance at the end of the period so that the full 90 days is not really a driver. But the

9    decline in the loan portfolio or the balance at the end of the period is primarily driven by two

10   things. One is just seasonality. Fourth quarter is a higher quarter for Bill Me Later and then those

11   consumers pay off their balances in a relatively timely manner so Q4 to Q1 seasonality with Bill

12   Me Later is all else equal, going to be coming down. And secondly and probably more importantly

13   *is our credit decision you mentioned in that our collective desire and the team's ability with their*

14   *decision you mentioned to in tough economic times and tough credit environments with high*

15   *unemployment, they have the ability in their model to be tighter in their decisioning and we did that*

16   *during the course of the quarter and as a result we took on lower balances consciously as we tried*

17   *to manage the dynamics between both growth and risk management.*"[10]

18       38.    Similarly, during a quarterly earnings conference call that took place on July 22,

19   2009, eBay's CFO again demonstrated that Bill Me Later is the entity to decide whether to make

20   the loans to consumers, "Let me touch on a few key operating metrics from Bill Me Later. Bill Me

21   Later's gross receivable balance at quarter end was $553 million. *We continue to be cautious in*

---

24   [8] Bill Me Later, Terms and Conditions of the Bill Me Later Payment System (2009),
25   https://www.securecheckout.billmelater.com/paycapture-content/fetch?hash=PD4106KD&
     content=bmlweb/bmlwebtnc.html.

26   [9] CIT Group Inc., *CIT Bank Helps Make Shopping on the Internet Easy, Quick, and Secure with
     "Bill Me Later"* (2009), *available at* http://www.cit.com/products-and-services/cit-bank/bill-me-
     later/index.htm.

27   [10] Seeking Alpha, eBay Q1 2009 Earnings Call Transcript (Apr. 22, 2009), *available at*
28   http://seekingalpha.com/article/132454-ebay-inc-q1-2009-earnings-call-transcript?page=-1
     (emphasis added).

1    *our credit approval process in order to manage the quality of new receivables we under-write,*
2    which we believe is the right trade-off in the current environment."[11]

3         39.     And in its 10-Q dated April 28, 2009, eBay further stated, "The Bill Me Later
4    service is offered to a wide range of consumers, and the profitability of this business *depends on*
5    *our ability to manage credit risk* while attracting new consumers with profitable usage patterns.
6    *Bill Me Later approves loans using proprietary segmentation and credit scoring algorithms and*
7    *other analytical techniques designed to analyze the credit risk of the specific transaction.* These
8    algorithms and techniques may not accurately predict the creditworthiness of a consumer due to,
9    among other factors, inaccurate assumptions about a particular consumer or the economic
10   environment. Bill Me Later may also incorrectly interpret the data produced by these algorithms *in*
11   *setting its credit policies.*"[12]

12        40.     It makes sense that Bill Me Later would be the entity to perform the credit analysis
13   and make the loan decisions because, in addition to servicing the accounts, **Bill Me Later bears**
14   **the risk of loss associated with the loans**. Bill Me Later's Terms and Conditions state that the
15   consumer accounts are "operated and serviced by Bill Me Later" and that "Bill Me Later Inc. will
16   become the company to which you will owe the amounts due on your account."[13]

17        41.     An article on CNNMoney.com explains that Bill Me Later "runs a credit check to
18   gauge the credit-worthiness of the customer, then uses CIT (CIT, Fortune 500) bank to finance
19   online consumer purchases. *Then Bill Me Later buys the loan from CIT* and charges the customer
20   20% interest on the balance of the loan."[14]  There is no economic substance to this relationship. It
21   is a pure "round-trip" transaction, similar to money laundering.

22

23   [11] Seeking Alpha, eBay Q2 2009 Earnings Call Transcript (Jul. 22, 2009), *available at*
24   http://seekingalpha.com/article/150628-ebay-q2-2009-earnings-call-transcript?page=-1 (emphasis
     added).

25   [12] eBay's Inc.'s 10-Q dated April 28, 2009, at pp. 40-41, *available at* http://www.sec.gov/
     Archives/edgar/data/1065088/000119312509090300/d10q.htm (emphasis added).

26   [13] Bill Me Later, Terms and Conditions of the Bill Me Later Payment System (2009),
27   https://www.securecheckout.billmelater.com/paycapture-content/fetch?hash=PD4106KD&
     content=bmlweb/bmlwebtnc.html.

28   [14] Scott Moritz, *EBay to lend buyers a hand*, CNNMoney.com (Oct. 6, 2008),
     http://money.cnn.com/2008/10/06/technology/ebay-bill-me.fortune/index.htm (emphasis added).

010133-11 321951 V4                           - 11 -

1    42. Likewise, in its 10-Q dated April 28, 2009, eBay acknowledged that "*Bill Me Later is neither a chartered financial institution nor is it licensed to make loans in any state.* Accordingly, Bill Me Later relies on CIT Bank to extend credit to Bill Me Later customers in order to offer the Bill Me Later service. When a consumer makes a purchase using the Bill Me Later service, CIT Bank funds the consumer loan at the point of sale and advances funds to the merchant. *Bill Me Later then purchases the receivable related to the consumer loan extended by CIT Bank. Although CIT Bank continues to own each customer account, Bill Me Later owns the related receivable and is responsible for all servicing functions related to the account. . . .* We currently fund the purchase of receivables related to Bill Me Later accounts through free cash flow generated from our portfolio of businesses and from our existing line of credit."[15] Thus, Bill Me Later exerts ownership and control over these loans, for which it is the sole and immediate purchaser of the accounts receivable.

43. And in its 10-Q eBay further acknowledged that it carries all of the risks associated with these loans, "As of March 31, 2009, Bill Me Later had an aggregate consumer loan portfolio of approximately \$507.6 million. *Like other businesses with significant exposure to losses from consumer loans, the Bill Me Later service faces the risk that account holders will default on their payment obligations*, resulting in accounts becoming uncollectible, and the risk of potential charge-offs related to the loan portfolio."[16] Moreover, eBay's independently audited financial statements, like this one, recognize that these consumer loans are assets of Bill Me Later. Once again, there is no economic substance to this relationship, as Bill Me Later owns both the account liabilities and receivables – it is tantamount to laundering money but instead Bill Me Later is "loan laundering."

44. Bill Me Later claims that its open-end instant credit plan is offered through CIT Bank, which is "the Lender." However, Bill Me Later is the true lender of the consumer loans because it: is the sole entity to interface with the consumers, owns and controls the branding of the loans which are available only through its credit software engine, provides the online loan

---

[15] eBay's Inc.'s 10-Q dated April 28, 2009, at p. 40, *available at* http://www.sec.gov/Archives/edgar/data/1065088/000119312509090300/d10q.htm (emphasis added).

[16] *Id.* at p. 41, *available at* http://www.sec.gov/Archives/edgar/data/1065088/000119312509090300/d10q.htm (emphasis added).

010133-11 321951 V4                                                      - 12 -

1    applications for consumers, accepts the online loan applications from consumers, reviews the credit

2    of consumer applicants, decides whether to make the loans, is the entity to extend the credit to

3    consumers, services the accounts, accepts loan payments from consumers, bears the financial risk

4    of loss for these loans in the event of a consumer default, claims the consumer loans as assets in its

5    independently audited financial statements, and sets the late fees and interest rates about which the

6    People complain. CIT Bank is the lender in name only so that Bill Me Later can in effect borrow

7    its bank charter for purposes of avoiding California laws limiting excessive late fees and usurious

8    interest rates.

9        45.    An article in Forbes explains that prior to CIT Bank's involvement in Bill Me

10   Later's scheme, it used JPmorgan Chase "to underwrite [its] credit risk. That let Bill Me Later

11   customers carry a balance at a credit-card-like 18% annual rate. In turn, [Bill Me Later] pa[id]

12   JPmorgan the prime rate plus a few basis points on these balances."[17]

13       46.    This scheme is similar to that used by some unlawful payday lenders, known as

14   "rent-a-charter" or "rent-a-bank" whereby "payday lenders make their loans through the nominal

15   auspices of out-of-state banks, which are exempted from state usury laws. In a typical charter-

16   renting scheme, the payday lender markets the loans, accepts applications, interacts with

17   customers, and retains the predominant economic interest in the transaction. . . . While the scheme

18   rests on the payday lender's claim to be acting as a mere 'agent' for the out-of-state bank, the

19   payday lender is the de facto lender. The bank's economic interest in the loan is generally limited

20   to the fee it receives from the payday lender for the use of its charter. Rent-a-charter has been

21   widely criticized by state and federal regulators . . . ."[18]

22       47.    Indeed, eBay acknowledged in its recent 10-Q that "Our Bill Me Later service is

23   similarly subject to a variety of laws and regulations. Although Bill Me Later does not originate

24   loans, *one or more jurisdictions may conclude that Bill Me Later is a lender* or money transmitter

---

[17] Erika Brown, *Technology: Credit Card Killer*, Forbes (Dec. 11, 2006), *available at* http://www.forbes.com/forbes/2006/1211/068_2.html; Bill Me Later, About Bill Me Later (2009), *available at* https://www.billmelater.com/about/index.xhtml?s_kwcid=billmelater.

[18] Ellen Harnick, *Georgia's Payday Loan Law: A Model for Preventing Predatory Payday Lending*, Center for Responsible Lending (June 2006), http://www.responsiblelending.org/payday-lending/policy-legislation/states/pa-GeorgiaPayday-0606.pdf.

010133-11 321951 V4                                    - 13 -

1  or loan broker, which could subject us to liability or regulation in one or more jurisdictions.

2  Additionally, federal regulators could mandate changes to the relationship between Bill Me Later

3  and CIT Bank, the financial institution that Bill Me Later relies on to extend credit to customers

4  with the Bill Me Later service. Any adverse changes in this relationship could negatively impact

5  Bill Me Later's ability to continue operating its business as currently conducted."[19]

6      48.    As the true lender, Bill Me Later is subject to and the terms of its consumer credit

7  agreements violate the provisions of Civil Code section 1671 because the excessive late fees set

8  and charged by Bill Me Later bear no reasonable relationship to the range of actual damages

9  incurred by Bill Me Later and are instead unlawful and unfair penalties:[20]

| | If the balance is: | The late fee is: | |
|---|---|---|---|
| Fee for paying late | Under $5.00 | $0.00 | |
| | $5.00 to $19.99 | $5.00 | |
| | $20.00 to $149.99 | $19.00 | |
| | $150.00 to $249.99 | $29.00 | |
| | Over $249.99 | $39.00 | |

49.    As the true lender, Bill Me Later is subject to and the terms of its consumer credit

agreements violate the provisions of Section 1 of Article XV of the California Constitution because

these loans bear usurious rates: the annual percentage interest rate set and charged by Bill Me Later

is 19.99%—far in excess of the 10% permitted by the California Constitution.[21] As detailed in a

Wall Street Journal article, "[i]f you don't pay in full within 30 days, you'll face 19.9% interest on

the amount owed. Additionally, there are tiered fees, which vary depending on the total balance

owed. . . . Bill Me Later tends to draw consumers with higher credit profiles and that

---

[19] eBay's Inc.'s 10-Q dated April 28, 2009, at p. 36, available at
http://www.sec.gov/Archives/edgar/data/1065088/000119312509090300/d10q.htm.

[20] Bill Me Later, Terms and Conditions of the Bill Me Later Payment System (2009), at
https://www.securecheckout.billmelater.com/paycapture-content/fetch?hash=PD4106KD&
content=bmlweb/bmlwebtnc.html.

[21] *Id.*

1    approximately 65% of the site's customers pay on time and in full. But 35% do not . . . ."[22] In

2    fact, when the tiered late fees are included, the imputed APR can exceed 100%.

3        50.    Bill Me Later first approved a loan for Plaintiff in or about October 2008 to finance

4    a $1,068.08 computer purchase from Cyberpower Inc. Plaintiff's initial stated annual percentage

5    rate was 19.99%. On subsequent monthly bills, Bill Me Later imposed more than one $39 late

6    penalty fee, which is far in excess of the actual damages Plaintiff caused Bill Me Later by his late

7    payment.

8        51.    In addition, if one were to compute the assessed late penalty fee as an annual

9    percentage rate, Plaintiff has been charged at more than a 70% annual interest rate during his

10   monthly billing cycles. Plaintiff's experience in this regard is typical of Bill Me Later's illegal

11   practices.

12       52.    For example, a consumer posting at http://www.ripoffreport.com/Credit-Debt-

13   Services/BillMeLater/billmelater-stay-away-from-bil-eq8f2.htm   (accessed   Sept.   8,   2009)

14   complains: "While ordering books online for $40.87, I was invited to open a BillMeLater account,

15   which I did, wanting to know how it worked; I paid $20.07 for the first billing cycle. I forgot the

16   due date of the second billing cycle, since it's not part of my regular bills. On a balance of $20.87, I

17   was charged a late fee of $19.00, plus $2 finance charge. On their website, my statement shows an

18   **ANNUAL PERCENTAGE RATE OF 115% !!!** I am charged a daily fee of $0.35. I wanted to

19   pay my total remaining balance, & immediately cancel my account. Their system did not allow me

20   to do that: I had to do it on two different days; in the meantime, of course, they are charging more

21   money. This is pure usury; these companies should not be allowed to be in business; they should

22   be sued, made to reimburse their exorbitant fees, terminated, and closed." (Bold added.)

23       53.    A   consumer   posting   at   http://www.complaints.com/2007/november/9/BILL_

24   ME_LATER_-_DON_T_USE_THEM__154171.htm (accessed Sept. 3, 2009) complains:  "They

25   are charging **annual percentage rate of 104.35%** Isn't this against the law?" (Bold added.)

26

27

28   ---
     [22] *Bill Me Later Can Ding Your Credit Score Now*, The Wall Street Journal (Dec. 9, 2008),
     http://blogs.wsj.com/wallet/2008/12/09/bill-me-later-can-ding-your-credit-score-now/.

1  54.  A consumer posting at http://www.complaintsboard.com/complaints/bill-me-later-

2  c124715/page/1.html (accessed Sept. 3, 2009) complains: "I had problems with them also. First of

3  all no billing statements, then finally after four or five months you get one, with late fees and

4  finance charges out the wazoo. Did you ever notice the **42.74% annual percentage rate**. Is this

5  legal?" (Bold added.)

6  55.  A consumer posting at http://www.complaintsboard.com/complaints/bill-me-later-

7  c124715/page/1.html (accessed Sept. 3, 2009) complains: "And **my interest rate is 64.83%!!!**

8  MY EXPERIENCE WITH BILL ME LATER WAS ABSOLUTELY TERRIBLE. IT IS A SCAM

9  AND A RIP OFF. My $45 flower purchase became a practically $200 flower purchase and a huge

10  headache." (Bold added.)

11  56.  A consumer posting at http://www.businessweek.com/the_thread/techbeat/archives/

12  2005/12/quickie_reader.html (accessed Sept. 3, 2009) complains: "Late with a payment for a

13  46.00 balance and was charged additionally 19.00 plus 2.00 'finance charge.' Made online account

14  to pay 21.00 balance and they show I owe 31.00? (46.20 check sent late has been cashed). Get this:

15  **'Annual percentage rate for this billing cycle: 51.95%'"** (Bold added.)

16  57.  A consumer posting at http://www.businessweek.com/the_thread/techbeat/archives/

17  2005/12/quickie_reader.html (accessed Sept. 3, 2009) complains: "i used BML one time for a

18  christmas purchase this year. i thought it seemed interesting, so i wanted to try it. my purchase was

19  under $30. they sent me a bill online. i could not figure out how to log in to the website to pay it,

20  and i kept putting it off. it ended up being late because i forgot about it (my fault, i know). so, when

21  i finally figured out how to log in to the site, they were **charging me 95% APR!!!!!!!!!!!!!!!** OH

22  MY GOD, ARE YOU KIDDING ME? so, i ended up having to pay over 45 bucks for the thing. i

23  couldn't believe it. obviously, it was my fault that the payment was late, BUT it should be

24  ILLEGAL to charge someone that much in interest." (Bold added.)

25  58.  A consumer posting at http://www.complaints.com/2006/september/14/www.bill-

26  me-later.com_157.htm (accessed Sept. 3, 2009) complains: "Then at the beginning of August I got

27  a bill from them forwarded from our old address through the post office forwarding we set up. The

28  bill was dated July 7 with a due date of August 1. I got this well after August 1. They never

010133-11 321951 V4                                    - 16 -

1   changed our address. It showed a balance of $13.00 for a $9.00 late fee and two $2.00 finance

2   charges, with **this bill showing an APR of (I am not kidding or exaggerating here) 116.67%**

3   My husband had received a similar bill, after not receiving bills for something with over 76%

4   APR." (Bold added.)

5          59.     A consumer posting at http://www.defendyourdollars.org/2008/10/bill_me_later_

6   might_mean_pay_u.html (accessed Sept. 3, 2009) complains: **"The APR on my December**

7   **statement was 19.99%; it rose to 23.34% on my January statement, and this month it is a**

8   **whopping 41.44%!"** (Bold added.)

9          60.     A consumer posting at http://www.my3cents.com/showReview.cgi?id=60847

10   (accessed Sept. 3, 2009) complains: "Last November I purchased several books on Amazon with a

11   gift certificate. The total was $15.63 over the amount of my gift cert. and I was offered a Bill Me

12   Later option which I assumed was part of Amazon. I received the bill in the mail after the stated

13   due date, so I paid the $15.63 I owed. Ever since I have been receiving bills from them with late

14   fees and **annaul percentage rates up to 180%.** The latest bill is $150.00. On what planet would

15   someone pay that amount on a $15 bill?" (Bold added.)

16          61.     A consumer posting at http://www.complaintsboard.com/complaints/bill-me-later-

17   c2757.html (accessed Sept. 3, 2009) complains: "Here's the kicker....THEY HAVE TWO

18   **ANNUAL PERCENTAGE RATES DEPENDING ON HOW YOUR BALANCE IS**

19   **CALCULATED. One is 19.99% and THE OTHER IS 102.70%!"** (Bold added.)

20          62.     A    consumer    posting    at    http://www.consumeraffairs.com/credit_cards/bill_

21   me_later.html (accessed Sept. 3, 2009) complains: "There is a place on this staement in front of

22   me that says their **ANNUAL PERCENTAGE RATE for this billing cycle is 104.39%** No one,

23   for anything, should charge an APR 104.39%. Further, adding on late fees in excess of the original

24   debt is absurd." (Bold added.)

25                       **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

26                              **(AGAINST ALL DEFENDANTS)**

27          63.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth in this

28   paragraph.

1    64.    The contracts between Defendants and Plaintiff and the Plaintiff classes are

2    consumer contracts, i.e., contracts for the "retail purchase, or rental, by such party of personal

3    property or services, primarily for the party's personal, family, or household purposes." Cal. Civ.

4    Code § 1671(c)(1).

5    65.    Accordingly, the clause by which Defendants collect their excessive late fees from

6    Plaintiff and the Plaintiff classes are "void except that the parties to such a contract may agree

7    therein upon an amount which shall be presumed to be the amount of damage sustained by a breach

8    thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix

9    the actual damage." Cal. Civ. Code § 1671(d).

10   66.    The late fees Defendants include in their consumer contracts are void under

11   California Civil Code section 1671, subdivision (d) because it is neither impracticable nor

12   extremely difficult to ascertain the actual damage, if any, that Defendants sustain as the result of

13   late payment of invoices by consumers; it is contained in a contract of adhesion; and the primary

14   motivation for and effect of the charge is to earn additional profits for, and not to compensate,

15   Defendants.

16        WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

17   **SECOND CAUSE OF ACTION FOR VIOLATIONS OF THE CONSUMERS LEGAL
     REMEDIES ACT**

18
     **(AGAINST ALL DEFENDANTS)**
19
     67.    Plaintiff repeats and realleges the foregoing allegations as if fully set forth in this
20
     paragraph.
21
     68.    The above-described conduct of Defendants violates the Consumers Legal
22
     Remedies Act, California Civil Code sections 1750 *et seq.* by:
23
         (a)    Passing off goods or services as those of another (Cal. Civ. Code
24
     § 1770(a)(1));
25
         (b)    Misrepresenting the source, sponsorship, approval, or certification of goods
26
     or services (Cal. Civ. Code § 1770(a)(2));
27
         (c)    Misrepresenting the affiliation, connection, or association with, or
28
     certification by, another (Cal. Civ. Code § 1770(a)(3));

010133-11 321951 V4                              - 18 -

1    (d) Representing that goods or services have sponsorship, approval,

2 characteristics, ingredients, uses, benefits, or quantities which they do not have or that a

3 person has a sponsorship, approval, status, affiliation, or connection which he or she does

4 not have (Cal. Civ. Code § 1770(a)(5));

5    (e) Representing that goods or services are of a particular standard, quality, or

6 grade, or that goods are of a particular style or model, if they are of another (Cal. Civ. Code

7 § 1770(a)(7));

8    (f) Advertising goods or services with intent not to sell them as advertised (Cal.

9 Civ. Code § 1770(a)(9));

10    (g) Representing that a transaction confers or involves rights, remedies, or

11 obligations which it does not have or involve, or which are prohibited by law (Cal. Civ.

12 Code § 1770(a)(14));

13    (h) Inserting an unconscionable provision in the contract (Cal. Civ. Code

14 § 1770(a)(19)).

15   69. Pursuant to California Civil Code section 1780, subdivision (a), Plaintiff seeks an

16 order enjoining Defendants from engaging in the methods, acts, or practices alleged herein.

17 Pursuant to California Civil Code section 1782, if Defendants does not rectify its illegal acts,

18 Plaintiff intends to amend this complaint request the following relief: a) actual damages; b)

19 restitution of money to Plaintiff and class members; c) punitive damages; d) attorneys' fees and

20 costs; and e) other relief that this Court deems proper.

21   WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

22   **THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE CALIFORNIA CONSTITUTION**

23   **(AGAINST ALL DEFENDANTS)**

24   70. Plaintiff repeats and realleges the foregoing allegations as if fully set forth in this

25 paragraph.

26   71. Defendants have violated Section 1 of Article XV of the California Constitution,

27 California's usury law.

28

010133-11 321951 V4       - 19 -

72. The transactions at issue are loans or forbearances within the meaning of Section 1 of Article XV of the Constitution.

73. The interest charged by Bill Me Later is unlawful because it exceeds the statutory maximum of 10% for any loan or forbearance of any money, goods, or things in action, where the money, goods, or things in action are for use primarily for personal, family, or household purposes within the meaning of Section 1 of Article XV of the Constitution, subdivision (1).

74. The said loans and interest thereon are absolutely repayable to Bill Me Later.

75. Bill Me Later has a willful intent to enter into a usurious transaction in that the conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which it receives.

WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

**FOURTH CAUSE OF ACTION IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTIONS 17200 *ET SEQ.***

**(AGAINST ALL DEFENDANTS)**

76. The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted against Defendants Bill Me Later and eBay.

77. California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants have engaged in unlawful and unfair business acts and practices in violation of section 17200.

78. Defendants have violated the unlawful prong of section 17200 because Defendants have violated Civil Code section 1671 by the acts and practices set forth in this Complaint.

79. The late fees charged by Bill Me Later are in conjunction with consumer loans for the retail purchase, or rental, of personal property or services primarily for the personal, family, or household purposes within the meaning of Civil Code section 1671, subdivision (c)(1).

80. The late fees charged by Bill Me Later are unlawful under Civil Code section 1671, subdivision (d) because they amount to penalties far in excess of and without reasonable relationship to the amount of damages sustained by Bill Me Later as a result of late payments.

81. Defendants have violated California's Consumers Legal remedies Act, Cal. Civ. Code sections 1750 *et seq.*, by the acts and practices set forth in this Complaint.

1    82.    Defendants have violated the unlawful prong of section 17200 because Defendants
2    have violated Section 1 of Article XV of the California Constitution, California's usury law, by the
3    acts and practices set forth in this Complaint.

4    83.    The transactions at issue are loans or forbearances within the meaning of Section 1
5    of Article XV of the Constitution.

6    84.    The interest charged by Bill Me Later is unlawful because it exceeds the statutory
7    maximum of 10% for any loan or forbearance of any money, goods, or things in action, where the
8    money, goods, or things in action are for use primarily for personal, family, or household purposes
9    within the meaning of Section 1 of Article XV of the Constitution, subdivision (1).

10    85.    The said loans and interest thereon are absolutely repayable to Bill Me Later.

11    86.    Defendants have a willful intent to enter into a usurious transaction in that the
12    conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only
13    intent necessary on the part of the lender is to take the amount of interest which it receives.

14    87.    Defendants have violated the unfair prong of section 17200 because the acts and
15    practices set forth in the Complaint offend established public policy, and because the harm they
16    cause to consumers in California greatly outweighs any benefits associated with those practices.

17    WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

18    ## FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING

19    ## (AGAINST EBAY)

20    88.    The preceding paragraphs of this Complaint are realleged and incorporated by
21    reference and asserted against Defendant eBay.

22    89.    EBay has aided and abetting Bill Me Later in violating California's consumer
23    protection laws and California's constitution to the detriment of Plaintiff and the Classes.

24    90.    EBay has so acted with knowledge of the unlawful purpose of Bill Me Later to
25    avoid California's consumer protect laws, thereby causing injury to consumers and competitors.

26    91.    EBay has acted with the intent or purpose of encouraging or facilitating the
27    violations of California's consumer protection laws and the California constitution.

28

010133-11 321951 V4                                              - 21 -

1        92.    EBay has provided financial support, which aids, promotes, encourages Bill Me

2   Later to implement and continue to unlawfully charge contractual penalties and usurious interest

3   rates.

4       WHEREFORE, Plaintiff prays for judgment and relief as set forth below.

5   **PRAYER FOR RELIEF**

6   Plaintiff and the Classes pray for judgment against Defendants as follows:

7       A.    An order by which the Court enjoins Defendants from performing or proposing to

8   perform or aiding and abetting any acts of unfair competition in California;

9       B.    A restitution order requiring that Defendants restore to California borrowers all

10  funds improperly received by Defendants;

11      C.    An order rescinding all loan contracts between California borrowers and any

12  Defendant made in violation of California law;

13      D.    An order by which the Court requires Defendants to cooperate fully to remove all

14  adverse information related to loan contracts made in violation of California law from the credit

15  reports of consumers harmed by Defendants' unfair practices;

16      E.    An order requiring that defendant pay damages equal to three times the interest paid

17  by Plaintiff and the Classes;

18      F.    A declaration that all future interest to be charged on loan contracts to Plaintiff and

19  the Classes is void and contrary to both law and the California constitution;

20      G.    Punitive damages;

21      H.    Costs of suit;

22      I.    Both pre- and post-judgment interest on any amounts awarded;

23      J.    Payment of reasonable attorneys' fees as required under Cal. Civ. Proc. Code

24  § 1021.5; and

25      K.    For such further and additional relief as the Court deems proper.

26  **DEMAND FOR JURY TRIAL**

27  Plaintiff hereby demands a trial by jury.

28  Dated:                         HAGENS BERMAN SOBOL SHAPIRO LLP

010133-11 321951 V4                 - 22 -

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

By _____
         JEFF D. FRIEDMAN

Shana E. Scarlett
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com

STEVE W. BERMAN
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

*Attorneys for Plaintiff,*
*Kyle Sawyer*

010133-11 321951 V4

- 23 -